John A. WELCH, Appellee,

v.

Lt. Dean SPANGLER, Appellant,

Jack Ellefritz, Correctional Officer;
Roger Lawson.

No. 90–2846.

United States Court of Appeals,
Eighth Circuit.

Submitted May 15, 1991.

Decided July 19, 1991.

William A. Hill, Des Moines, Iowa, for appellant.

Robert A. Nading, II, Ankeny, Iowa, for appellee.

Before BOWMAN, Circuit Judge, and HEANEY and BRIGHT, Senior Circuit Judges.

HEANEY, Senior Circuit Judge.

John A. Welch, an inmate at the Iowa State Penitentiary, contends that the search of his legal papers by prison officials violated the policy governing such a search established in *Dee v. Brewer*, Civ. No. 77–102–1 (S.D.Iowa July 25, 1980). The district court agreed with Welch and ordered the officials to pay a five hundred dollar contempt fine to the court, ten dollars in nominal damages to Welch, and reasonable attorneys' fees.[1] We affirm.

## FACTS

To search a prisoner's legal papers in the Southern District of Iowa, prison officials must comply with the consent decree promulgated in *Dee v. Brewer*, Civ. No. 77–102–1 (S.D.Iowa July 25, 1980). In that case, the district court ordered the Iowa State Penitentiary to establish a policy which ensured that:

1. An inmate's legal papers will not be taken or searched outside of the inmate's presence and observation without the inmate's prior knowledge and consent.

2. If an inmate requests that his legal papers be searched only in his presence, the person conducting the search will take the papers from the inmate, search the papers while the inmate watches, and then return the legal papers to the inmate immediately.

3. Any search of an inmate's legal papers will be made only to detect the presence of contraband. An inmate's legal papers will not be read.

4. In the absence of exigent circumstances, an inmate's legal papers will not be taken from or searched in his cell or room while the inmate is not present unless the inmate gives prior consent to such a taking or search.

*Id.* To implement this directive, the prisons developed a *Dee v. Brewer* form which incorporates the policies outlined above.

Welch kept his legal papers in several envelopes in his cell. Some of these documents related to a complaint Welch had filed against Officer Jack Ellefritz for assault in a matter unrelated to this case. On January 28, 1987, Welch asked to make a call from his cell concerning legal matters. At the time of this request, Ellefritz was serving food to the inmates by passing the food through a "food flap," which is an opening in the cell door. What happened next is unclear, but it appears that Ellefritz shut the food flap on Welch's fingers, which were apparently there to block the opening. The two then exchanged heated words, and Ellefritz claims that Welch seized his clip-on tie, tore it up, and flushed it down his cell toilet.

In response, Ellefritz ordered Welch to approach the cell door to be searched. Once again, the stories differ, but apparently Welch refused to comply until he received a *Dee v. Brewer* form. After a few minutes, during which Welch vocally maintained his request to receive the form, Lieutenant Dean Spangler arrived and reiterated Ellefritz's order. At this point, Welch, believing he would be forcibly removed unless he complied, agreed to be cuffed and was removed from the cell without resistance. When he was returned, his legal work was scattered throughout the cell. The prison unit manager verified this fact and testified that Welch immediately complained about it. Although Ellefritz and Spangler claim that they do not remember Welch requesting a *Dee v. Brewer* form, Welch adamantly maintains that he did, and another prisoner testified that he heard Welch make this request. Similarly, Spangler, who conducted the cell search,

1. The state does not appeal the award of attorneys' fees.

stated that he merely walked through the cell to look for the tie and that he did not search any of Welch's legal papers. The trial court resolved the contested facts in favor of Welch and found that Spangler searched Welch's legal materials.

## DISCUSSION

 Sufficient factual evidence supports the trial court's finding. Welch testified that his legal papers were in their envelopes when he was escorted from the cell, but were scattered throughout the cell when he returned. The prison unit manager confirmed Welch's testimony that papers were scattered throughout the cell when Welch was returned to it. No prison officer testified that the papers were scattered before Welch was removed from his cell. Spangler admitted that he alone searched the cell, but denies looking at Welch's papers. After hearing this conflicting testimony and resolving it in favor of Welch, a magistrate concluded that Spangler violated the consent decree by searching Welch's legal papers without providing Welch the opportunity to sign a *Dee v. Brewer* form. Accordingly, the magistrate found Spangler to be in contempt of court, and the district court agreed with this conclusion. Because we do not believe that the district court abused its discretion in holding Spangler in contempt of court, we affirm.[2] *See, e.g., Davis v. Bowen*, 894 F.2d 271, 272 (8th Cir.1989) (review of contempt motion is limited to determining whether district court abused its discretion).

 Spangler cites *DeGidio v. Pung*, 920 F.2d 525 (8th Cir.1990), for the proposition that consent decrees cannot be enforced through section 1983 actions. While this may or may not be the case, Spangler fails to note that Welch's action also proceeded under the contempt power of the courts[3] and that the district court expressly held: "Defendant Spangler is found to be in civil contempt for violation of the decree in *Dee v. Brewer.*" If the court lacked the power to hold parties in contempt, consent decrees would be robbed of much of their legal significance, and the purpose for which the decree was entered would be undermined. Accordingly, Welch properly succeeded on the merits of his contempt action regardless of the disposition of his section 1983 action.

 Spangler next argues that the five hundred dollar fine was not linked to any goal of future deterrence. We disagree. Where the purpose of the fine is to ensure the defendant's future compliance with the court's order, in assessing the fine, the court must "consider the character and magnitude of the harm threatened by the continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United States v. United Mine Workers of America*, 330 U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). The fine imposed here reflects these concerns. Not imposing a substantial fine in this case would be tantamount to inviting the prison officials to ignore the dictates of *Dee v. Brewer*, thereby undermining the authority of the court to ensure compliance with its orders. In short, without enforcement mechanisms such as fines or similar remedial sanctions, consent decrees cannot have their intended coercive effect.

 Spangler also argues that the nominal damages assessed by the district court (ten dollars) were inappropriate. He contends that absent proof of actual injury or damages, nominal damages cannot be

---

**2.** We do not find Spangler's argument that exigent circumstances justified the search persuasive. Ellefritz testified that he thought his tie was flushed down the toilet, discrediting the proffered reason for the search of the cell. Moreover, no evidence or testimony suggested that Welch hid the tie in his legal papers.

**3.** While Welch's initial pro se complaint did not invoke the contempt power of the court, and instead relied on section 1983 exclusively, his lawyer, who was appointed to represent Welch prior to trial, moved the magistrate to amend the pro se complaint to include a contempt action. The court received this request prior to trial, and subsequently considered the proceedings to include both a section 1983 and a contempt action.

awarded. To support his argument, Spangler relies on two Supreme Court decisions,[4] both of which were based on section 1983, but not on the court's contempt power, as was the case here. While there is authority for the proposition that *compensatory* fines payable to the complainant must be based on proof of complainant's actual loss, *see, e.g., In re Chase & Sanborn Corp. v. Nordberg,* 872 F.2d 397 (11th Cir.1989), Spangler cites no authority holding that actual loss must be proven to justify an award of *nominal* damages for violation of a consent decree, nor has our independent research discovered any such cases. The district court awarded nominal damages to ensure compliance with *Dee v. Brewer.* We therefore review the award under the *United Mine Workers* standard outlined above. *United Mine Workers,* 330 U.S. at 304, 67 S.Ct. at 701. In our opinion, an award of nominal damages to Welch personalizes the remedy for violating *Dee v. Brewer,* and thus substantially ensures that Welch's legal papers will not be illegally interfered with in the future. *See Powell v. Ward,* 643 F.2d 924 (2d Cir. 1981) (affirming an award of nominal damages to inmates in response to the violation of an earlier court order, although the inmates had not suffered any actual damages).

Accordingly, we affirm the award of nominal damages, as well as affirm the five hundred dollar fine ordered by the district court.

---

**4.** *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), and *Memphis Community* *School District v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986).