USCA1 Opinion

 

 July 14, 1993 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 91-2183 SHERMAN MILLER, Plaintiff, Appellant, v. DEPARTMENT OF CORRECTION, ET AL., Defendants, Appellees. __________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Robert E. Keeton, U.S. District Judge] ___________________ ___________________ Before Selya, Cyr and Boudin, Circuit Judges. ______________ ___________________ Sherman Miller on brief pro se. ______________ Scott Harshbarger, Attorney General, and Timothy A. Mullen, _________________ _________________ Assistant Attorney General, on brief for appellees. __________________ __________________ Per Curiam. Pro se plaintiff Sherman Miller appeals Per Curiam. __________ ___ __ from a district court judgment for the defendants in this 42 U.S.C. 1983 action. For the reasons discussed below, we affirm. I I Miller is sixty-five years old. For most of the past fifteen years, he has been a resident of the Treatment Center for Sexually Dangerous Persons located in Bridgewater, Massachusetts (hereinafter: "Treatment Center" or "BTC"). Following a 1978 conviction for rape, Miller was committed to the BTC pursuant to a Suffolk Superior Court order adjudicating him a Sexually Dangerous Person ("SDP") pursuant to M.G.L. c. 123A, 6 (re- pealed) and directing that he "be voluntarily committed to the ___________ Treatment Center . . . ." (emphasis supplied). In 1984, Miller commenced this civil rights action. The amended complaint sought declaratory and injunctive relief and damages for alleged consti- tutional deprivations attending his confinement at the BTC. All named defendants are state officials formerly responsible for operations at the BTC.1 Although the amended complaint asserted seven claims, only two are implicated by this appeal. Miller's first claim alleged that the defendants violated his constitu- tional right of access to the courts by maintaining an inadequate ____________________ 1The defendants are former Department of Corrections Commis- sioner Michael Fair, Charles Gaughan (former Superintendent of the Massachusetts Correctional Institution at Bridgewater), James Callahan (former Commissioner of the Department of Mental Health), Richard Boucher (former Administrator of the BTC) and Mildred Gil (law librarian at the BTC). 2 law library and restricting library access. The other surviving claim alleged that the defendants violated Miller's constitution- al right to rehabilitative treatment. Miller alleged that the defendants failed to develop an individual treatment plan ("ITP") for him although he believed such plans had been developed for other BTC patients and that the denial of an ITP violated his right to due process and equal protection under the Fourteenth Amendment.2 He sought injunctive relief requiring defendants to develop an ITP which would afford him a realistic opportunity to improve his mental condition, and requiring defendants to afford him adequate access to the BTC law library. On December 10, 1985, the district court granted a preliminary injunction on Miller's "access to the courts" claim. The order required the defendants to obtain certain additional volumes for the law library and to ensure that Miller receive reasonable photocopying services. Miller's criminal sentence expired on May 8, 1989. No significant judicial proceedings took place thereafter until the case was called for trial in January 1991. Relying on the expiration of his criminal sentence, Miller sought release from the BTC by instituting a state-court habeas corpus proceeding. On March 20, 1991, the superior court ruled that Miller had been involuntarily committed to the Treatment _____________ Center and, therefore, was not entitled to release until such time as his adjudication as a SDP was revoked under M.G.L. c. ____________________ 2Miller alleged that the defendants discriminated against him because of his unique "voluntary" commitment status and that the BTC maintained that Miller's right to participate in its programs was inferior to that of involuntarily committed BTC patients. 3 123A, 9.3 Thus, but for his status as a SDP, Miller would be a free man. Nevertheless, he has never submitted an administra- tive request for release or reclassification. Miller's 1983 action was called for trial in January 1991. Both sides sought a continuance; the BTC had lost its case file and Miller required further discovery. The district judge continued the trial to April but warned that belated dispositive motions would not be allowed to delay the trial further. Four days before the rescheduled trial, defendants filed a motion to dismiss or for summary judgment, based on this court's March 22, 1991 decision in Langton v. Johnston, 928 F.2d 1206 (1st Cir. _______ ________ 1991). Langton resolved an appeal from a class action, Bruder v. _______ ______ Johnston, brought on behalf of all patients civilly committed to ________ the BTC.4 The Langton plaintiffs sought to have the defendants _______ all of them state officials responsible for operations at the BTC held in contempt of certain consent decrees requiring the establishment of various therapeutic, educational, and vocational programs at the BTC. See generally Williams v. Lesiak, 822 F.2d ___ _________ ________ ______ 1223 (1st Cir. 1987) (describing consent decrees). Like Miller, the Langton plaintiffs had raised an inadequate treatment claim _______ that alleged, inter alia, that the defendants had failed to _____ ____ ____________________ 3The superior court ruling was based on the statements made by the committing judge during the course of the SDP hearing, as well as Miller's own conduct. The Massachusetts Appeals Court affirmed. See Miller v. Tink, 33 Mass. App. Ct. 1103 (1992), ___ ______ ____ further rev. denied, 413 Mass. 1106 (1992). _______ ____ ______ 4We refer to Bruder and Langton interchangeably. We note ______ _______ that Miller's 1983 action and Bruder were pending before ______ different district judges at roughly the same time, although the Bruder suit was filed two years after Miller's suit and the ______ Miller case was not resolved until almost two years after Bruder ______ was decided. Miller unsuccessfully filed a motion to intervene as a class representative in Bruder. See also infra note 14. ______ ___ ____ _____ 4 provide treatment reasonably designed to bring about the pa- tients' recovery. See 928 F.2d at 1212. Our decision in Langton ___ _______ upheld the district court's ruling that the defendants were not in contempt of the consent decrees but rather had achieved substantial compliance with those decrees notwithstanding the fact that the ITPs of many patients were not being fully imple- mented. We also observed that the BTC had a "current and compre- hensive law library." See id. at 1213, 1216, 1220-23. The ___ ___ defendants contended that Langton barred Miller's claims under _______ the doctrine of res judicata or collateral estoppel. Miller ___ ________ moved to strike defendants' dispositive motion.5 When the case was called for trial, defendants' motion to dismiss/for summary judgment and Miller's motions to strike and compel discovery remained pending. The district court initially told Miller that he would not have to file a response to defendants' motion and instructed defendants' counsel to assert their legal arguments in the context of a motion for directed verdict. Miller, however, was not prepared for trial. He had not subpoenaed any witnesses, being uncertain as to how the court would proceed on the pending motions.6 Loath to delay the resolution of Miller's claims any longer, the district court ____________________ 5Shortly before defendants filed their motion to dismiss/for summary judgment, Miller moved to compel discovery and for a judgment of contempt. He sought to compel Michael Stevens, the Chairman of the BTC's Reintegration Review Board ("RRB"), to complete his deposition and produce documents. Miller's motion to strike argued that defendants improperly moved for summary judgment before discovery was completed. 6Miller complained that he had been unable to complete the deposition of Michael Stevens, Chairman of the BTC's RRB. Miller hoped to elicit Stevens' admission that Miller's treatment was not being based on professional judgment under Youngberg v. _________ Romeo, 457 U.S. 307 (1982). _____ 5 expressed a preference for proceeding to trial. But after hearing defendants' arguments, the court expressed some uncer- tainty as to whether the case would be tried or resolved on defendants' motion.7 The court recessed to allow Miller to prepare a subpoena for Stevens, as well as a witness list and a proffer indicating how Miller's evidence might defeat defendants' Langton/Bruder defense. After the recess, Miller submitted a _______ ______ witness list identifying six witnesses on his "access to the courts" claim and seven witnesses on his inadequate treatment claim.8 He argued that Bruder did not bar these claims because ______ (1) Bruder was not decided on constitutional grounds; (2) Miller ______ had not been a party to Bruder, in part due to his alleged ______ voluntary commitment status; (3) many of the issues Miller sought ____________________ 7The district court explained to Miller, "If you don't have a proffer of evidence that would establish if credited that there is a cause of action remaining in the face of the legal arguments the defendant is asserting, then whether we do it as a trial or ____ _______ __ __ __ __ _ _____ __ do it as a motion for a summary judgment, it's time to end the __ __ __ _ ______ ___ _ _______ ________ case . . . ." (emphasis added). 8Miller's proffer indicated that he expected two members of the BTC's Reintegration Review Board Dr. Mark Sokol and Michael Stevens to identify the treatments recommended for Miller that had not been provided. Miller further indicated that he wished to question Dr. Albert Jurgela, Director of Clinical Services, to find out why various recommended treatments had not been provided. Miller complained that the BTC refused to give him clozapine a drug Miller had taken for six or seven years prior to his incarceration and which allegedly allowed him to function normally in society even though the BTC's RRB specif- ically recommended it. He implied that his only hope of release might rest on securing clozapine therapy. Miller wanted to call Dr. Daniel Kreigman and Dr. Martin Miller to inquire why the BTC was not giving him clozapine. He expressed the hope that another witness, Dr. Guy Seymour, would testify that Miller suffered from schizophrenia, thus justifying the use of clozapine. (continued) In support of his "access to the courts" claim, Miller sought to prove that certain restrictions on his movement within the law library violated the constitutional right of access to the courts of inmates he was assisting in his capacity as an appointed research assistant. 6 to raise concerning his treatment arose after Bruder was decided, ______ and (4) Bruder merely determined that the state was not required ______ to implement all treatments recommended in a particular SDP's ITP, it did not decide what the state was required to provide to a SDP, such as Miller, whose criminal sentence had expired. Defendants reiterated their argument that Langton/Bruder barred _______ ______ Miller's remaining claims. The district court concluded that the case could be resolved by affording Miller an opportunity to file affidavits and memoranda in opposition to defendants' arguments. The court adjourned the "trial" after one day, allowing Miller leave to submit such filings. Thereafter, Miller filed a number of submissions in support of his claims. With respect to his inadequate treatment claim, Miller averred that he had been adjudicated a SDP and committed to the BTC in 1979, that the BTC's RRB had formulated an extensive treatment plan for him on November 1, 1989, but that he had "not been afforded one of the behavioral and pharmacological treatment modalities recommended by the [RRB]." He reiterated his complaint that he had not been treated with clozapine, notwithstanding the RRB's recommendation. On June 11, 1991, the district court issued a memoran- dum of decision denying relief on Miller's inadequate treatment claim. The court ruled that it was not necessary to decide whether Langton/Bruder barred the claim under the doctrines of _______ ______ res judicata and collateral estoppel. The court ruled instead ___ ________ that Langton/Bruder precluded relief under the doctrine of stare _______ ______ _____ decisis. Noting that Miller had based his inadequate treatment _______ 7 claim largely on the fact that he had not been given clozapine as recommended by the RRB, the court reasoned: In light of the recognition by the courts in Bruder and Langton that patients were not ______ _______ receiving all of the treatment recommended in their individual treatment plans, . . . pla- intiff has failed to demonstrate a genuine ______ __ ___________ _ _______ issue of material fact on the claim of con- _____ __ ________ ____ __ ___ _____ __ ____ stitutionally inadequate treatment . . . [and _____________ __________ _________ the] defendants are entitled to judgment as a matter of law. (Emphasis supplied.) The court awarded Miller partial relief on his "access to the courts" claim,9 but held that he had not stated an ac- tionable claim for denial of access to the courts on behalf of his fellow patients because he failed to allege that those patients had no avenue of access to the courts except through Miller. Miller filed a motion for partial reconsideration, arguing that the district court erred in construing his inade- quate treatment claim as similar to that raised by the plaintiffs in Langton/Bruder. Relying on his May 13, 1991 affidavit, Miller _______ ______ argued that, unlike the Langton plaintiffs, he was not complain- _______ ing that he had not received all the treatments that had been ___ recommended for him. Rather, Miller's complaint was that he had not received any of the behavioral and pharmacological treatment ___ modalities that had been recommended for him by the RRB in 1989. Miller argued that simply because the BTC was not able to imple- ment all of the programs recommended in each patient's ITP did ___ not mean that the BTC had no obligation to implement some of the ____ ____________________ 9The court issued a judgment declaring that as of December 10, 1985, the BTC law library was constitutionally inadequate. Miller was awarded $500 for attorney fees incurred in enforcing the district court's December 10, 1985 preliminary injunction. 8 programs repeatedly recommended for him. Miller further averred that his group therapist and another staff person were recently "bumped," which would leave him without treatment. The defendants filed an opposition which included an affidavit from Dr. Jurgela and copies of the RRB's reports on Miller's 11/1/89 and 7/25/90 status reviews.10 Dr. Jurgela attested that Miller's therapist continued to provide group therapy to Miller notwithstanding the fact that she had been "bumped," and that Miller also received treatment in the form of weekly "house meetings" led by another staff clinician. Dr. Jurgela acknowledged, however, that the current RRB report recom- mended that Miller receive individual therapy, personality testing, general behavioral and plethysmographic assessments, covert conditioning, relapse prevention, and anger and depression management, but that Miller had not received any of these assess- ments or treatments.11 He also acknowledged that a psychophar- macological consultation had been recommended for Miller, presum- ably a reference to the recommended clozapine therapy. The RRB reports confirmed Miller's allegation that the RRB had recommend- ed a trial use of clozapine in 1989 and that, as of July 1990, he had received neither clozapine nor the other recommended services noted immediately above. The 1989 RRB report concluded that Miller remained a SDP whose prognosis was poor. The 1990 RRB report noted that services might be lacking for Miller and if ____________________ 10Under the consent decree, the RRB is required to evaluate each patient, on an annual basis, to determine the progress of therapy and the advisability of permitting the patient to reenter the community on a limited basis. See Langton, 928 F.2d at 1210. ___ _______ 11Dr. Jurgela noted that Department of Mental Health ("DMH") policy prohibited the use of plethysmography at any DMH facility. 9 that were the case, as opposed to Miller simply resisting servic- es that had been offered, "such conditions should be corrected as soon as possible." Miller responded to the defendants' opposi- tion, arguing that defendants' evidence established that of the ten treatment modalities that had been recommended by the RRB in 1989, he had received only one (group therapy). The district court rejected Miller's contentions on the ground that Miller had "not demonstrated a genuine issue of material fact on the adequacy of treatment claim." The court reiterated that "the Treatment Center is not obligated to imple- ment the [ITP] drawn up by the [RRB] in all its details" and found that Miller's claim that he had "not been afforded one of the behavioral and pharmacological treatment modalities recom- mended by the [RRB]" in 1989 was "a factual assertion not clearly supported by the ambiguous language in" Miller's affidavit because Miller had failed to identify a treatment other than clozapine that he had not received. The court further found that Miller's claim that he was no longer receiving any treatment since certain staff members had been "bump[ed]" merely assert- ed "sketchy facts and unsupported conclusions" which failed to comply with Fed. R. Civ. P. 56(e). The court denied Miller's motion for partial reconsideration and his amended motion for partial reconsideration. Miller then filed other postjudgment motions: to supplement the pleadings, reopen the case, and amend the pleadi- ngs to conform to the facts set forth in Miller's September 23, 1991 affidavit ("Supplementary Affidavit"). In the first motion, Miller argued that further reconsideration was warranted because 10 the court had failed to apprise him of the requirements of Rule 56(e). Miller's Supplementary Affidavit spelled out each recom- mended treatment with which he had not been provided since 1986.12 The court declined further reconsideration, asserting that its June 11, 1991 decision was not based on defendants' motion for summary judgment, therefore Miller's alleged unaware- ness of the requirements of Rule 56(e) was irrelevant. The court further found that Miller's Supplementary Affidavit disclosed no set of facts that might entitle him to relief and that amendment of the pleadings following "trial" was not in the interests of justice. The court held that Miller's Supplementary Affidavit was not part of the record. Miller's motions were denied and this appeal followed. II II The district court orders disposing of Miller's postju- dgment motions are reviewable for "abuse of discretion." See ___ Desenne v. Jamestown Boat Yard, 968 F.2d 1388, 1392 (1st Cir. _______ _________ ____ ____ 1992)(deci-sion on Rule 59(e) motion for reconsideration reviewed for abuse of discretion); Rodriguez-Antuna v. Chase Manhattan ________________ _____ _________ Bank Corporation, 871 F.2d 1, 3 (1st Cir. 1989)(denials of Rule ____ ___________ 60(b) motions may be reversed only for abuse of discretion). We find that the district court acted well within its discretion, particularly in view of the extreme tardiness of Miller's re- quests for relief in an action commenced in 1984. Moreover, ____________________ 12Among these were treatments for anger, depression and self-control management, personality testing, relapse prevention treatment and plethysmographic assessment. But cf. note 11, ___ ___ supra. _____ 11 Miller misapprehends the district court ruling on his inadequate treatment claim. The district court correctly ruled that Miller failed to provide evidentiary support, or even a sufficient proffer of evidence, to support the claim of inadequate treat- ment, since he failed to show that the claim was not precluded under the doctrine of stare decisis by Langton/Bruder. The _____ _______ _______ ______ district court arrived at its decision on the basis of Miller's ambiguous affidavit attesting that "he had 'not been afforded one ___ of the behavioral and pharmacological treatment modalities recom- mended by the [RRB]' . . . ." Memorandum of August 26, 1991, at p. 2. The district court supportably construed the quoted language as a reference to the BTC's failure to administer clozapine, as recommended by the RRB. Id. at 4. Relying on ___ Langton, the district court ruled that, without more, the BTC's _______ mere failure to provide this one recommended treatment was insufficient to demonstrate a genuine issue of material fact. Id. at pp. 3-4. As concerns the alleged "bumping" of Miller's ___ "therapists," see id. at 4, the district court correctly noted ___ ___ that the term "bumping" is ambiguous and conclusory. Id. at 4-5. ___ Thus, the district court's disposition of Miller's motions for reconsideration and for relief from judgment, see id. at pp. 5-6, ___ ___ constituted no abuse of its discretion. Thereafter, Miller filed additional postjudgment motions. See Memorandum of November 4, 1991. The district ___ court denied Miller's motion to amend the pleadings to conform to his Supplementary Affidavit. See Fed. R. Civ. P. 15(a),(b). ___ Here, we believe the district court erred in holding that Miller- 's "Supplementary Affidavit reveal[ed] no set of facts that would 12 entitle plaintiff to relief under the law as stated in the Memorandum and Order of June 11, 1991." Id. at 3. The June 11 ___ order relied on Langton/Bruder, but the Supplementary Affidavit _______ ______ filed by Miller materially altered the record evidence tendered in support of his inadequate treatment claim by relating numerous other procedures and therapies recommended for Miller by the RRB which were not afforded him by the BTC. In our view, the Supple- mentary Affidavit may well have raised a genuine issue of materi- al fact as to whether Miller's constitutional claim based on inadequate treatment was actionable. Nevertheless, the district court did not abuse its discretion. This court determined in Langton that it was unnecessary, indeed inadvisable, for the _______ district court to address the constitutional claim to adequate treatment "because the existing consent decrees 'require[d] the provision of adequate treatment for [BTC] patients' at a level beyond that required by any applicable constitutional minima." Langton, 928 F.2d at 1217. And so it is here. Thus, although _______ Miller attempted to assert a constitutional right to treatment based on professional judgment under Youngberg v. Romeo, 457 U.S. _________ _____ 307, 323 (1982), and such cases as Ohlinger v. Watson, 652 F.2d ________ ______ 775, 777 (9th Cir. 1981) (holding that sex offenders committed to indeterminate life sentences have a constitutional right to treatment providing a realistic opportunity for cure or improve- ment), and Cameron v. Tomes, 783 F. Supp. 1511, 1516 (D. Mass. _______ _____ 1992) (holding that involuntarily committed SDP at BTC has constitutional right to treatment based on professional judg- 13 ment), modified, slip op. 92-1343 (1st Cir., March 31, 1993),13 ________ we think the district court did not abuse its discretion by dismissing Miller's postjudgment motion to amend the pleadings so late in the day. III III Miller further argues that the district court erred in holding that Langton bars his inadequate treatment claim because _______ he was not a party to Langton. Nevertheless, and notwithstanding _______ the dispute over whether Miller was voluntarily or involuntarily committed to the BTC, see supra note 3 & accompanying text, it is ___ _____ clear that he is among the plaintiff class in Langton/Bruder, _______ ______ which is defined as "all individuals who are presently or in the future will be civilly committed to the Treatment Center." See ___ Bruder, slip op. at p. 43.14 Moreover, both Miller and the ______ Bruder plaintiffs charged that the treatment received at the BTC ______ was not constitutionally adequate. Finally, even if Miller's rights under the applicable consent decree were violated, the appropriate vehicle for their enforcement is not a section 1983 action but an action for contempt (like the one filed by the Bruder plaintiffs two years ______ after Miller commenced this action). See, e.g., DeGidio v. Pung, ___ ____ _______ ____ ____________________ 13We decided that Cameron's claim was a challenge to the conditions of confinement. See slip op. at pp. 12-13. Thus, ___ whether SDPs have a constitutional right to treatment remains an open question in this circuit. See slip op. at 11-12; Knight v. ___ ______ Mills, 836 F.2d 659, 668 & n.13 (1st Cir. 1987). _____ 14Miller's motion to intervene in Bruder sought intervention ______ as a named class representative. Its denial imported no finding that Miller was not adequately represented by the plaintiff class. 14 920 F.2d 525, 534 (8th Cir. 1990); Green v. McKaskle, 788 F.2d _____ ________ 1116, 1123 (5th Cir. 1986). Cf. Welch v. Spangler, 939 F.2d 570, ___ _____ ________ 572 (8th Cir. 1991). Any other rule would tend to discourage governmental authorities from entering into consent decrees in public law litigation, encourage the splintering of civil rights claims on an individual basis, and promote disrespect for judi- cial decrees duly entered following careful proactive review of the often complex mix of individual and institutional consider- ations involved in such litigation. IV IV Miller next contends that the district court erred in holding that he lacked standing to assert a constitutional right of access to the courts on the part of certain other BTC patients whom he assisted. Before the district court, Miller alleged that he had been appointed as the legal research assistant for minimum privilege and segregation patients on June 21, 1989 (five years after he commenced this action). His responsibilities included instructing such patients on the procedure for requesting legal materials, assisting their preparation of legal pleadings, and obtaining and returning books for patients. On March 31, 1991 (approximately two weeks before trial), the Department of Correc- tions ("DOC") imposed certain restrictions which allegedly prevented Miller from performing his duties as legal research assistant. As of that date, Miller was prohibited from obtaining books from the shelves of the law library. As a result, he was no longer able to Shepardize cases nor to procure cases cited in texts. In addition, Miller had to request books in advance so that some other person could retrieve them. Miller alleged that 15 books requested by him often were not produced when Miller and the patients arrived at the library. Other limitations allegedly impinged on Miller's ability to communicate with the patients he was supposed to assist.15 Miller alleged that these restric- tions foreclosed meaningful legal research assistance to other patients and that he was the only legal assistance afforded to BTC. The district court rejected the right of access claim because Miller had not pleaded a third party claim and failed to show that the patients he had been assisting had no other avenue of relief. We affirm the dismissal of the third party claim; it came too late. Cf. Andrews v. Bechtel Power Corp., 780 F.2d 124, ___ _______ _______ _____ _____ 139 (1st Cir. 1985) (upholding denial of motion to amend com- plaint after commencement of trial, where complaint had been filed seven years earlier). Affirmed; no costs. Affirmed; no costs. ________ __ _____ ____________________ 15For example, Miller was required to sit at one table while the patients he assisted sat at separate tables in the library. Miller also claimed that often he was not notified by corrections officers that his assistance had been requested by patients. 16