Everett R. LYON; Dennis E. Fisher and Richard A. Lamphere, Appellants,

v.

Hal FARRIER; Crispus C. Nix; John Emmitt; Ron Welder; Frank Roffe and Lt. Woodall, Appellees.

No. 83–2367.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 8, 1984.

Decided Feb. 15, 1984.

Rehearing Denied March 21, 1984.

Layne M. Lindebak, Asst. Atty. Gen., Des Moines, Iowa, for appellees.

Everett R. Lyon, pro se.

Dennis E. Fisher, pro se.

Before ROSS, McMILLIAN and FAGG, Circuit Judges.

PER CURIAM.

Everett R. Lyon, Dennis E. Fisher, and Richard A. Lamphere appeal from the district court's dismissal with prejudice of their claims under 42 U.S.C. § 1983. For reversal, they contend that the district court committed error in concluding that their constitutional rights had not been violated. After reviewing the record and relevant case law, we affirm.

In March 1982, a confidential informant notified officials of the Iowa State Penitentiary that a group of inmates, including Lyon, Fisher, and Lamphere, were planning an escape. The officials informed the inmates that they were under investigation. Although the inmates were already in protective custody, they were transferred to different protective custody cells. Through clerical error, the inmates were placed on "red tag" status. A red tag tied to an inmate's cell indicates that the inmate is to receive privileges according to a more restricted schedule. After five days, the red tag error was detected and corrected, and the inmates were returned to regular protective custody. As part of the investigation, legal materials and personal property were removed from the inmates' cells to the warden's office, where they were searched and returned the following day. In addition, Lyon and Fisher were immediately removed from their jobs as cellhouse lumpers or utility men and were not reinstated after their return to regular protective custody.

A month later the inmates sued in federal court, alleging deprivation of due process, infliction of cruel and unusual punishment, unlawful search and seizure, and denial of access to the courts. The case was referred to the U.S. Magistrate and, after an evidentiary hearing, he recommended entry of

Thomas J. Miller, Atty. Gen. of Iowa, Gordon E. Allen, Sp. Asst. Atty. Gen.,

judgment for the defendants on all claims. The district court accepted his findings and dismissed the complaint. On appeal, the inmates reassert their due process rights relating to disciplinary action and job security and their right to be free from unlawful search and seizure.

First, the inmates argue that the district court committed error in finding that the prison rules do not create a liberty interest protected by the due process clause. Rule 804 provides that the extent of inmates' procedural rights depends on the gravity of their losses. *See Policy and Procedural Guidelines: Procedure for Discipline and Control of Inmates* § 804(A)(6). Notice must precede disciplinary actions; reported rule violations must be accompanied with written notice within 24 hours, while summary action, such as administrative segregation, requires more elaborate procedures. § 804(B)(3).

Concerning the effect of rules and statutes in creating protected interests, the Supreme Court has held that "the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates" constitutes a state-created liberty interest. *Hewitt v. Helms,* —— U.S. ——, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). *See Johnson v. Stark,* 717 F.2d 1550, 1551 (8th Cir.1983). The Court, however, has "never held that statutes and regulations governing daily operation of a prison system conferred any liberty interest in and of themselves." *Hewitt v. Helms, supra,* 103 S.Ct. at 870.

■ Any liberty or property interest that might be implicated by Rule 804 did not arise in this case. We note that the inmates' losses were not severe. They were moved to slightly smaller cells which had no outlets for their televisions. They did not forfeit any reduction of sentence or "good time" credit and were not changed to maximum security status. All three remained in protective custody status before, during, and after the relevant events. Transfers of inmates "to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily

contemplated by a prison sentence." *Id.* at 869–70. Rule 804(Á)(6) emphasizes the flexibility of process requirements: in applying the proper measure of process, decisionmakers focus on the word "due," and observe greater procedural protection in cases of greater loss to the inmate. Thus, minor losses require relatively less procedural protection. In this case, the procedure observed by prison personnel adequately protected the inmates' rights relative to their potential losses.

■ We also observe that the official acts complained of were not punitive in nature. Under *Bell v. Wolfish,* 441 U.S. 520, 539, 99 S.Ct. 1861, 1874, 60 L.Ed.2d 447 (1979), a disability is not punitive if it is "reasonably related to a legitimate governmental objective * * *." The official action in this case was a minimally intrusive means of investigating a possible escape, and therefore was related to the legitimate ends of maintaining security and protecting the public. *Cf. Jones v. Mabry,* 723 F.2d 590 (8th Cir.1983). Because the investigation was nonpunitive, it did not invoke the procedural protection of Rule 804, and no protected interest was involved.

■ In addition, we note that procedural protections alone, absent an underlying substantive entitlement, do not constitute substantive, protected interests. In *Olim v. Wakinekona,* —— U.S. ——, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983), the Supreme Court held that "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *See also Jones v. Mabry, supra,* at p. 593. It is well established that prisoners have only narrowly defined liberty interests, for imprisonment necessarily retracts many of the liberties of the free. *Hewitt v. Helms, supra,* 103 S.Ct. at 869. Among the liberties which prisoners do not enjoy is choice of cells. Transfer within the prison, *id.* at 869–70, or to another prison, *Olim v. Wakinekona, supra,* 103 S.Ct. at 1745–46, is within the discretion of prison officials. Therefore, because the inmates have no underlying substantive interest

contrary to their transfer in this case, no justification arises for process under Rule 804.

■ The inmates also claim that the district court committed error in determining that their due process rights were not violated by the failure of prison officials to reinstate them in their prison jobs with back pay. Inmates have no constitutional entitlement to tenure in prison jobs. *Garza v. Miller,* 688 F.2d 480, 486 (7th Cir.1982), cert. denied, —— U.S. ——, 103 S.Ct. 796, 74 L.Ed.2d 1000 (1983); *see Gibson v. McEvers,* 631 F.2d 95, 98 (7th Cir.1980). Whatever liberty or property interests inhere in prison employment are the product of state law. *Peck v. Hoff,* 660 F.2d 371, 373 (8th Cir.1981). To create such interests, state law must use "language of an unmistakably mandatory character * * *." *Hewitt v. Helms, supra,* 103 S.Ct. at 871.

■ The prison regulations that govern this case do not create property or liberty interests. The inmates note that Paragraph VII (9) of the prison's *Inmate Policy and Procedure Statements No. 82–3–18– 399: Inmate Payroll Procedures* provides that an inmate under investigation or placed on Summary Segregative Status "will be returned to his assignment and receive back pay." Although appellant Lyon was assigned to a new job, Fisher and Lamphere were not reemployed. Nevertheless, they had no state-created right to return to work. The portion of Paragraph VII cited above described permissible absences from work with pay. Although it implies a right to return to work, it is necessarily controlled by Paragraph VI ("Removal from Assignment"), which gives the Classification Committee the authority to remove inmates from their jobs at the written request of specified prison staff members. The prison security director testified in general terms before the magistrate that the committee denied reemployment to Fisher and Lamphere. The discretion of the committee and staff is not further limited in this paragraph. Absent substantive limitations on such discretion, the regulation creates no liberty interest subject to due process protection. *Olim v. Wakinekona, supra,* 103 S.Ct. at 1747; *Garza v. Miller, supra,* 688 F.2d at 485–86. Because existing procedures were followed, and because no protected interests arose under the regulations, the removal of the inmates from their jobs was proper.

Finally, the inmates contend that the search and seizure of property in their cells violated their fourth amendment rights. The consent decree entered in *Dee v. Brewer,* Civil No. 77–102–1 (S.D.Iowa July 25, 1980), provides that, absent consent or exigent circumstances, an inmate's legal papers will not be searched or removed from his cell in his absence. It is contended that exigent circumstances did not exist in this case.

■ While we have found that prisoners retain some fourth amendment rights while in prison, these rights are "limited by institutional security needs and the prisoner's reduced expectation of privacy." *United States v. Surridge,* 687 F.2d 250, 256 (8th Cir.), cert. denied, 459 U.S. 1044, 103 S.Ct. 465, 74 L.Ed.2d 614 (1982); *see also United States v. Stumes,* 549 F.2d 831, 832 (8th Cir.1977); cf. *United States v. Hinckley,* 672 F.2d 115, 129 (D.C.Cir.1982). We have found no cases defining "exigent circumstances" as the phrase is used in *Dee.* In *Bell v. Wolfish, supra,* 441 U.S. at 557–60, 99 S.Ct. at 1883–85, however, the Supreme Court allowed searches of pretrial detainees' living areas and body cavities, after "balancing the significant and legitimate security interests of the institution against the privacy interests of the inmates." A balancing of institutional and individual interests here suggests that exigent circumstances were present. Prisoner escapes threaten the security of society and the discipline of the prison. To prevent escapes, prison officials must thoroughly and promptly investigate credible information about escapes. Effective investigation may require the inmate's brief absence from the area to be searched, so that contraband is not concealed or destroyed. *Bell v. Wolfish, supra,* 441 U.S. at 555–56 n. 36, 99 S.Ct. at 1882–83 n. 36. Therefore, the search con-

ducted here was proper under the exigent circumstances that confronted prison officials.

Accordingly, the judgment of the district court is affirmed.