Paulino C. ALDAPE, Appellee,

v.

John LAMBERT, James Pezley, Paul
Hedgepeth, Warden, Appellants.

No. 93–2055.

United States Court of Appeals,
Eighth Circuit.

Submitted March 15, 1994.

Decided Aug. 30, 1994.

**620**

Kristin Ensign, Des Moines, IA, argued, for appellants.

Jeffrey Lipman, Des Moines, IA, argued, for appellee.

Before MAGILL, Circuit Judge, and HEANEY and JOHN R. GIBSON, Senior Circuit Judges.

HEANEY, Senior Circuit Judge.

Paulino C. Aldape, an inmate confined at the Iowa State Penitentiary, commenced an action against the acting warden of the institution, Paul Hedgepeth, and two correctional officers, John Lambert and James Pezley. He alleged that defendants Lambert and Pezley had violated his Eighth Amendment right to be free from cruel and unusual punishment. Aldape further alleged that Hedgepeth had directed Lambert and Pezley to seize his legal files and to search them out of his presence and without his consent to being absent in violation of the terms of a stipulation and release (hereinafter "stipulation") reached in *Dee v. Brewer*, No. 77–102–1 (S.D.Iowa July 25, 1980), and that Hedgepeth and the two correctional officers were in contempt of court for their actions.

The constitutional claim was tried to a jury, which returned a verdict in favor of Aldape against Lambert and in favor of Pezley. The court denied Lambert's motions for judgment as a matter of law or for a new trial. The contempt claim was tried contem-poraneously to the court. The court found all defendants to be in civil contempt for violating the *Dee v. Brewer* consent decree and directed that judgment be entered against each defendant for nominal damages in the amount of $10 for each defendant. It fined each defendant $500, to be paid to the Clerk of the U.S. District Court, and encouraged the parties to settle the attorneys' fee issue in light of *Blum v. Stenson*, 465 U.S. 886, 902 n. 19, 104 S.Ct. 1541, 1550 n. 19, 79 L.Ed.2d 891 (1984), and *Moore v. City of Des Moines*, 766 F.2d 343, 346 (8th Cir.1985), cert. denied, 474 U.S. 1060, 106 S.Ct. 805, 88 L.Ed.2d 781 (1986).

On appeal, the defendants claim that the trial court abused its discretion when it found them in contempt for violating the *Dee v. Brewer* consent decree.[1] They further claim that the district court erred in denying Lambert's motion for judgment as a matter of law or, in the alternative, for a new trial. We affirm on the contempt issue as to Hedgepeth, reverse on the contempt issue as to Lambert and Pezley, and affirm on the constitutional issue as to Lambert.

### The Contempt Issue

On July 23, 1980, the plaintiff class in *Dee v. Brewer* entered into a stipulation with respect to the claims of inmates at two Iowa correctional institutions: The John Bennett Correctional Center (JBCC) and the Iowa State Penitentiary (ISP) at Fort Madison, Iowa. The plaintiff class sought injunctive and declaratory relief as well as compensatory and punitive damages with regard to a number of policies and practices at the two institutions. The stipulation provided for procedures to be followed in the handling of mail, the establishment of a law library in JBCC for inmate use, a policy permitting inmates to obtain books from the library, a policy permitting inmates to correspond with other law libraries, and a policy establishing a timely manner in which inmates could use the library. The stipulation also required

---

1. In *Welch v. Spangler*, 939 F.2d 570, 572 (8th Cir.1991), this court, relying on *Davis v. Bowen*, 894 F.2d 271, 272 (8th Cir.1989), cert. denied, 495 U.S. 904, 110 S.Ct. 1922, 109 L.Ed.2d 286 (1990), held that we review a district court's decision in contempt motions on an abuse-of-discretion standard. The defendants at page 25 of their brief ask us to review the district court's action in this case on the same standard.

the state to make arrangements for legal services for inmates. Section IV of the stipulation dealt with the manner in which the inmates' legal papers were to be handled and the circumstances under which an inmate's legal papers could be seized and searched. These subjects had long been a bone of contention between prison authorities and the inmates. *See Wycoff v. Brewer,* 572 F.2d 1260, 1263 (8th Cir.1978).

In consideration of the plaintiffs' release of all claims, other than for legal services, the state agreed under paragraph IV.B. of the stipulation that when an inmate is to be transferred to another institution,

> his property shall be searched for contraband and inventoried. Upon an inmate's request, the inmate's legal papers shall be searched for contraband (and not inventoried) in the presence of the inmate only.... *If an inmate requests that his legal papers be searched in his presence only, the papers will be placed in the container immediately after they are searched and the container will remain within the observation of the inmate throughout the transfer process.*
>
> 2. In each instance in which legal papers are transported, such papers will be sealed into the transporting container with the rest of the inmate's property. If the transporting container contains legal papers, that fact shall be clearly indicated on the exterior of the container.
>
> ....
>
> 6. At his request, the inmate's legal papers *shall be searched for contraband in the inmate's presence* and returned to him at the time the inmate is admitted to the receiving institution. (Emphasis added).

The stipulation further provides in paragraph IV.C. as follows:

> C. To establish within one (1) month of the date hereof as the policy governing searches of inmates['] legal papers at I.S.M.F. and I.S.P. the following:
>
> 1. An inmate's legal papers will not be taken or searched outside of the inmate's presence and observation without the inmate's prior knowledge and consent.

> 2. If an inmate requests that his legal papers be searched only in his presence, the person conducting the search will take the papers from the inmate, search the papers while the inmate watches, and then return the legal papers to the inmate immediately.
>
> 3. Any search of an inmate's legal papers will be made only to detect the presence of contraband. An inmate's legal papers will not be read.
>
> 4. In the absence of exigent circumstances, an inmate's legal papers will not be taken from or searched in his cell or room while the inmate is not present unless the inmate gives prior consent to such a taking or search.

The relevant facts relating to the search of Aldape's legal files are as follows: On August 17, 1990, Warden Hedgepeth received information that Aldape was going to bring a knife into his cell. Lambert and Pezley were ordered to search Aldape and his cell, including his legal files, for the knife. The officers proceeded to Aldape's cell and waited for him to return from work. When Aldape returned to the cellhouse, he was handcuffed in front by a cellhouse officer. Lambert and Pezley then took over and recuffed Aldape from behind. The two officers took Aldape to the shower where they strip searched him. After a seven-minute search, Aldape was uncuffed and left in the locked shower. Lambert and Pezley then proceeded to search Aldape's cell and his legal files.

Judge Donald O'Brien found that the search of Aldape's legal papers violated the *Dee v. Brewer* consent decree. He reasoned:

> Initially, it is evident that this was not a circumstance that required the need for "swift and immediate action" precluding the presence of the inmate. Testimony in this matter showed that institution officials received a tip that plaintiff might have a knife. Acting Warden Hedgepeth was notified of the situation and made a determination to proceed under the "exigent circumstances" portion of the *Dee v. Brewer* form. However, the officials then waited for at least 30 minutes while the plaintiff worked in the yard. Only when plaintiff voluntarily entered the cellhouse did the

correctional officers confront him and conduct a strip search. It was not until after this search was conducted that the officers moved on to plaintiff's cell and his legal papers. Without knowing the exact time period for these events, it is obvious that at least one hour (and probably more) elapsed from the time the officials were given the tip to the time they actually conducted the search of plaintiff's legal papers. This is not the kind of "swift and immediate action" that precludes the presence of the inmate. Any possible exigency that may have existed when the tip was received ceased to exist when the plaintiff was taken in to [sic] custody, strip searched, and placed in a locked shower cell. . . .

. . . Undoubtedly, the Iowa State Penitentiary has a significant and legitimate security interest in locating a knife or "shank" that plaintiff or other inmates might have access to. If plaintiff or any other inmate would have access to such a hidden knife, this legitimate and significant security interest would probably outweigh the plaintiff's privacy interest in his legal papers. The facts in this case, however, are such that plaintiff would have been the only inmate with access to a knife if it were hidden in his cell. Plaintiff was in a locked cellhouse where the inmates are not allowed to roam freely and at will. In addition, plaintiff had an individual cell that other inmates would not have access to. Therefore, the institution[']s security interest is in preventing plaintiff from having access to any knife he might have hidden in his cell. . . . [O]nce plaintiff was taken into custody, strip searched, and placed in a locked shower cell, away from his own cell with his papers in it, any exigency that may have existed ceased. The institution still had a significant and legitimate security interest in locating any knife that may be hidden in plaintiff's cell. However, that interest no longer outweighed plaintiff's privacy interest in his legal papers.

*Aldape v. Lambert,* No. 4–91–CV–50048, slip op. at 7–9 (S.D.Iowa Mar. 19, 1993). The court went on to state:

Once plaintiff was in the control and custody of the officers and had been strip searched and placed in a locked shower cell[,] there was no exigency relating to plaintiff's legal papers that would prevent institution officials from at least offering plaintiff the opportunity to consent to a search of his legal papers. Any exigency that may have existed ceased to exit. While it may have been inconvenient for the guards to transport the plaintiff to his cell to watch during the search of his legal papers or to transport the papers to the area where the plaintiff was being held so that he could watch the search, the provisions of *Dee v. Brewer* require such action under these facts. Plaintiff did not have access to any knife he may have placed in his legal papers. In addition, in this close management—lock-down unit, where inmates cannot walk freely and are cuffed at all times, the chances of another inmate having access to any hidden knife are too remote to be a consideration that would outweigh plaintiff's privacy interest in his legal papers.

. . . The spirit of *Dee v. Brewer* requires that this exception be used only in emergency situations where "the need for swift and immediate action preclude the presence of the inmate." The facts of this case do not present such a situation.

*Id.* at 11–12.

### Discussion

In analyzing the contempt issue, we consider whether Judge O'Brien erred in interpreting the *Dee v. Brewer* consent decree. His view, simply stated, is that once the officers seized Aldape's legal papers and handcuffed Aldape, no exigent circumstances existed that permitted the officers to search his legal files outside his presence unless he consented to being absent.

■ We review Judge O'Brien's decision in this case on an abuse-of-discretion standard. Here there clearly were exigent circumstances that justified Hedgepeth's seizure of Aldape's legal files (the suspected presence of a knife), but the exigency ended when the officers seized the legal files and placed Aldape in restraint. Moreover, no

new exigent circumstances arose that justified the correctional officers in searching the legal files outside of Aldape's presence and without his consent to being absent.

Hedgepeth advances two reasons for his position that once exigent circumstances exist to seize the legal files, prison officials have an absolute right not only to seize the files but also to search them out of the inmate's presence and without his consent to being absent, irrespective of the circumstances that exist at the time of the search. First, Hedgepeth cites the convenience of prison officials. Simple convenience does not rise to the level of exigent circumstances, however. While the term "exigent circumstances" is not defined in the stipulation, the Supreme Court has indicated that it is necessary to balance "the significant and legitimate security interests of the institution against the privacy interests of the inmates." *Bell v. Wolfish,* 441 U.S. 520, 560, 99 S.Ct. 1861, 1885, 60 L.Ed.2d 447 (1979). In *Bell* the term "exigent circumstances" was considered in a constitutional context. Certainly no lesser standard is appropriate where the terms of a stipulation are being construed.

Second, Hedgepeth stated that he saw no reason to prolong the agony for Aldape of being handcuffed from behind. The simple answer to this assertion is that Aldape could have been given the choice that *Dee v. Brewer* provides. He could have consented to the search of his legal papers outside his presence or remained in handcuffs and viewed the search until it was completed. Neither reason offered by Hedgepeth accords with the plain language of *Dee v. Brewer,* and neither is sufficient to outweigh Aldape's interest in not having his legal papers read, an interest that is specifically protected in paragraph IV.C.3. of the stipulation.

There will, of course, be instances in which circumstances dictate that the prisoner not be present when a search of his legal papers is made. *See Wycoff v. Hedgepeth,* 34 F.3d 614, 617 (8th Cir.1994). Here the *search* clearly could have been made in Aldape's presence without adversely affecting the security of the institution, and Hedgepeth was in contempt for ordering a search outside Aldape's presence.

█ We cannot, however, affirm the contempt finding against correctional officers John Lambert and James Pezley. They were acting under the direct order of the warden, who instructed them to conduct the search outside Aldape's presence and without his consent to being absent. We can scarcely hold them in civil contempt for following the order of Hedgepeth. Thus we reverse as to Lambert and Pezley on the contempt issue.

### The Eighth Amendment Issue

Lambert contends that the trial court erred in denying his motion for judgment as a matter of law, in denying his motion for a new trial, and in refusing to change jury instruction number 8. We reject these contentions.

█ Viewing the facts in the light most favorable to the verdict, as we must, *Morgan v. Arkansas Gazette,* 897 F.2d 945, 948 (8th Cir.1990), it is clear that the facts support the jury's verdict that Lambert violated Aldape's Eighth Amendment rights. There is little or no dispute that Aldape was under a medical order that should have precluded correctional officials from handcuffing him from behind.

Lambert's principal argument is that Aldape did not tell him or Pezley of his medical condition, and that they were otherwise unaware of it. Aldape testified, however, that he told them of his condition, and the jury chose to believe him rather than Lambert. We cannot substitute our judgment for that of the jury, which, under appropriate instructions, found for Aldape.

Lambert's second argument is that he was, at most, negligent in failing to contact Prison Health Services if, in fact, Aldape told him and Pezley of his medical condition. Again, this issue was fully aired to the jury under appropriate instructions, and the jury determined that Lambert's actions were willful rather than negligent.

Lambert's third argument is that even if he handcuffed Aldape from behind knowing that this action was contrary to medical orders, it was not serious enough to constitute

an Eighth Amendment violation. We disagree. In *Hudson v. McMillian,* ⸺ U.S. ⸺, ⸺, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992), the Supreme Court stated that the question in Eighth Amendment cases is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." The Court also stated that the injury need not be significant to violate the Eighth Amendment. *Id.* at ⸺, 112 S.Ct. at 999. Again the district court properly instructed the jury on this aspect of the case, and we will not overturn the verdict of the jury when there is evidence to support it.

█ Of course, Lambert is right when he says that not every push or shove violates a prisoner's constitutional rights, *Black Spotted Horse v. Else,* 767 F.2d 516, 517 (8th Cir.1985), but this was more than a push or a shove. It was the intentional infliction of pain for a significant period of time. Nor does this case fall within the ambit of *Whitley v. Albers,* 475 U.S. 312, 320, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986), where an inmate was shot by a correctional officer during a prison disturbance, and the shooting was part and parcel of a good faith effort to restore prison security. *Id.* at 326, 106 S.Ct. at 1087.

Lambert also contends that the district court erred in denying his motion for a new trial, largely for the reasons advanced in his argument for judgment as a matter of law. For the reasons previously stated in this opinion, we affirm the district court's denial.

█ Lambert next argues that the court erred in refusing to permit the defendants to introduce evidence that the contraband believed to be in Aldape's cell was a knife. The trial court ruled that this evidence was not relevant to the handcuffing issue. We review evidentiary rulings on an abuse-of-discretion standard and find no abuse here. *See United States v. Grooms,* 978 F.2d 425, 427 (8th Cir.1992).

█ Finally, Lambert contends that instruction number 8 was improper. That instruction reads as follows:

Your verdict must be for plaintiff and against defendants if all the following ele-

ments have been proved by the preponderance of the evidence:

First, the defendants knowingly handcuffed plaintiff in a manner inconsistent with a medical order; and

Second, the method of handcuffing by reason of his pre-existing shoulder injury caused excessive force and constituted unnecessary and wanton infliction of pain on the plaintiff; and

Third, as a direct result, plaintiff was damaged; and

Fourth, the defendants were acting under color of state law.

In determining whether the force used was excessive and constituted unnecessary and wanton infliction of pain, you must consider such factors as the need for the application of force, i.e. handcuffing him behind his back, the relationship between that need and the amount of force that was used, the extent of the injury inflicted, and whether the force was applied in a good faith effort to achieve a legitimate purpose or maliciously for the very purpose of causing harm.

If any of the above elements has not been proved by the preponderance of the evidence, then your verdict must be for the defendants.

App. Vol. I at 42. We see no error in the instruction. It was taken from the Eighth Circuit Model Jury Instruction 4.01. The instruction did not give the impression that there was a presumption that there was a written medical order with respect to Aldape's medical condition. The instruction tells the jury that it had to find that the defendants *knowingly* handcuffed the plaintiff in a manner inconsistent with a medical order. Thus the jury had to find there was a medical order outstanding.

For the reasons stated, we affirm the district court on the contempt issue as to Hedgepeth, reverse on the contempt issue as to Lambert and Pezley, and affirm on the constitutional issue as to Lambert.