Steven R. WYCOFF, Plaintiff–Appellant,

v.

Paul HEDGEPETH; Burton, Ltd.; Debbie Nichols; Ron Welder; Dan Deuse; Ruth McVey, Defendants–Appellees.

No. 93–1610.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1993.

Decided Aug. 30, 1994.

Rehearing Denied Oct. 4, 1994.

Jeffrey Lipman, Des Moines, IA, argued (Jeffrey M. Lipman and Brent C. Bedwell, on the brief), for appellant.

William A. Hill, Des Moines, IA, argued (Bonnie J. Campbell and William A. Hill, on the brief), for appellees.

Before WOLLMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

When prison investigators found alarming materials in inmate Steven Wycoff's personal effects, including directions for making bombs, Deputy Warden Paul Hedgepeth authorized the investigators to seize Wycoff's legal papers and search them outside his presence. Wycoff now appeals the district court's[1] decision not to hold defendants in contempt of the consent decree entered in *Dee v. Brewer*, Civ. No. 77–102–1 (S.D.Iowa July 25, 1980), which severely limits the right of Iowa prison officials to search an inmate's legal papers. We affirm.

## I.

On October 5, 1992, Wycoff was placed in investigative segregation for reportedly planning a work stoppage at the Iowa State Penitentiary. The following afternoon, during a routine inspection of Wycoff's personal effects, prison investigators found a sheaf of papers that included instructions on how to make several types of bombs, lists of where to obtain necessary materials, and descriptions of various hand-to-hand combat techniques. Although it was ultimately determined that these materials were placed in

Wycoff's cell by another inmate, the investigators did not know that at the time. Accordingly, they requested permission to search Wycoff's legal papers for additional contraband.

On the morning of October 7, Warden Hedgepeth ordered that Wycoff's legal materials be thoroughly searched at the Prison Administration building, outside Wycoff's presence. Hedgepeth invoked paragraph IV. C.4. of the *Dee v. Brewer* consent decree:

> 4. In the absence of exigent circumstances, an inmate's legal papers will not be taken from or searched in his cell or room while the inmate is not present unless the inmate gives prior consent to such a taking or search.

Later that day, Hedgepeth arranged to have an investigative team search Wycoff's legal papers early the next morning prior to starting their regular shifts. Hedgepeth explained these actions in an October 7 memorandum to Assistant Attorney General Layne Lindebak.

Investigators seized Wycoff's legal papers from his cell on October 7, and he demanded to be present when they were searched. Lieutenant Rewis rejected this demand; instead, he completed a *Dee v. Brewer* form reciting that Wycoff had refused to consent but that the Warden had approved an exigent circumstances search. Wycoff then called his attorney, Philip Mears, who in turn talked to Assistant Attorney General Lindebak. Lindebak reported that the papers were secure and would be searched the next day, but neither Wycoff nor Mears could be present. Mears told Lindebak that Wycoff might seek a temporary restraining order preventing prison officials from searching the papers in his absence. Lindebak reported this conversation to Warden Hedgepeth.

Wycoff did apply for a temporary restraining order at 9:00 a.m. the next morning, October 8. After a telephone hearing with both counsel, the district court restrained defendants from searching the legal materials unless either Wycoff or his attorney was

---

1. The HONORABLE CHARLES R. WOLLE, Chief Judge of the United States District Court for the Southern District of Iowa.

present. Unbeknownst to counsel and the court, however, defendants had completed their search at 7:15 a.m. that morning. Defendants returned the legal papers to Wycoff later that day. He does not complain about their condition when returned.

Wycoff then commenced this damage action, alleging that the search was in contempt of the *Dee v. Brewer* consent decree and a violation of 42 U.S.C. § 1983. Following an evidentiary hearing, the district court dismissed the contempt action and the § 1983 damage claim. The court found that "[t]he presence of bomb-making instructions in Wycoff's personal papers, together with his suspected involvement in an imminent work stoppage, gave correctional officers full justification and authority to remove all his legal papers and search them thoroughly." The court further found that the search was completed "within a reasonable period of time after the legal materials were removed from the cell," and that "defendants planned and carried out the search of the papers" without knowledge that the court was considering entry of a temporary restraining order.

Wycoff has abandoned his § 1983 claim on appeal.[2] But he contends that the district court abused its discretion in refusing to hold defendants in contempt of the *Dee v. Brewer* decree. Conceding that exigent circumstances warranted the initial seizure of his legal papers, Wycoff argues that no exigent circumstances justified his not being present when the papers were finally searched the next morning.

## II.

■ "Our review of the denial of a contempt motion is limited to determining whether the district court abused its discretion." *Davis v. Bowen,* 894 F.2d 271, 272 (8th Cir.1989), *cert. denied,* 495 U.S. 904, 110 S.Ct. 1922, 109 L.Ed.2d 286 (1990). The district court's findings of fact may not be disturbed unless clearly erroneous. *See Hazen v. Reagan,* 16 F.3d 921, 924–25 (8th Cir.1994). Wycoff "has the burden of establishing by clear and convincing evidence that the decree is being violated." *Sapanajin v. Gunter,* 857 F.2d 463, 465 (8th Cir.1988). In determining whether public authorities have violated a consent decree, "the court must always be mindful of the [decree's] purpose," *Mercer v. Mitchell,* 908 F.2d 763, 770 (11th Cir.1990), and substantial, good faith compliance is a defense to an action for civil contempt. *See Langton v. Johnston,* 928 F.2d 1206, 1220 (1st Cir.1991); *Balla v. Idaho State Bd. of Corrections,* 869 F.2d 461, 466 (9th Cir.1989); *Barnes v. Bosley,* 828 F.2d 1253, 1259–60 (8th Cir.1987).

■ Applying these principles here, the district court's denial of civil contempt relief must be affirmed. The court first found that the discovery of bomb-making instructions in Wycoff's cell created exigent circumstances within the meaning of the *Dee v. Brewer* decree. This finding is not clearly erroneous. An inmate's possession of such materials poses a grave threat to prison security, similar to that posed by plans for a prison escape or riot. At the time the bomb-making plans were discovered, prison security required that the investigators promptly explore whether Wycoff was engaged in an effort to manufacture bombs to effectuate an escape,[3] to start a riot,[4] or to kill another inmate.[5] In these threatening circum-

**2.** In *DeGidio v. Pung,* 920 F.2d 525, 534 (8th Cir.1990), "we decline[d] to hold that a consent decree may be enforced through a section 1983 action."

**3.** *See Katherine Ann Power,* Wash. Times, Oct. 12, 1993, at A16 (Power accomplice "blew himself up in prison with a bomb he was manufacturing for an escape attempt"); *Prison Escapee Killed,* BBC Summary of World Broadcasts, July 27, 1988, at 1 (available on NEXIS) (two escaped from Egyptian prison using bombs similar in design to those described in the materials in Wycoff's cell).

**4.** *See State v. Hartzog,* 96 Wash.2d 383, 635 P.2d 694, 707 (1981) (prison officer injured by bomb smuggled into courthouse by inmate seeking to disrupt trial); Joseph F. Sullivan, *Abstract,* N.Y. Times, Jan. 20, 1976, at 28 (inmate killed, 3 guards injured during attempted prison takeover by inmates using a homemade bomb).

**5.** *See State v. Gaskins,* 284 S.C. 105, 326 S.E.2d 132, 136 (1985) (inmate assassinated by fellow inmate using homemade bomb), *cert. denied,* 471 U.S. 1120, 105 S.Ct. 2368, 86 L.Ed.2d 266 (1985); David McKittrick, *Prison Authorities Search for Clues to Dining Hall Explosion,* The Independent, Nov. 26, 1991, at 2 (inmate bomb

stances, prison officials reasonably concluded that Wycoff might have concealed such contraband in his legal papers.

Contrary to Wycoff's contention, the exigency did not end when investigators seized his legal papers; they needed to quickly verify whether related contraband was concealed among Wycoff's voluminous litigation files. *Compare Lyon v. Farrier,* 727 F.2d 766, 769 (8th Cir.) ("prison officials must thoroughly and promptly investigate credible information about escapes"), *cert. denied,* 469 U.S. 839, 105 S.Ct. 140, 83 L.Ed.2d 79 (1984). Unlike the situation in *Welch v. Spangler,* 939 F.2d 570, 572 (8th Cir.1991), here there were exigent circumstances justifying a search of legal papers, Wycoff was given an opportunity to sign a *Dee v. Brewer* form, and his papers were returned to him in good order.

Wycoff complains that Chief Judge Wolle is the only Southern District of Iowa District Judge who does not require an additional showing of exigent circumstances for the search of an inmate's legal papers outside his presence. We do not so construe Chief Judge Wolle's order in this case. Under paragraph IV.C.4. of the *Dee v. Brewer* decree, there must be "exigent circumstances" to remove an inmate's legal papers from his cell, thereby depriving him of possession, and to search those papers outside his presence, thereby depriving him of the opportunity to watch the search and protect the integrity of his legal files. Whether these distinct inmate interests require separate analysis depends upon the facts of the particular case.

Exigent circumstances is a term not defined in the *Dee v. Brewer* decree or in the relevant case law. *See Lyon,* 727 F.2d at 769. "[T]he scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *Mahers v. Hedgepeth,* 32 F.3d 1273, 1274 (8th Cir.1994), quoting *United States v. Armour & Co.,* 402 U.S. 673, 682, 91 S.Ct. 1752, 1757–58, 29 L.Ed.2d 256 (1971). Shortly before the *Dee v. Brewer* decree was negotiated, the Supreme Court held that inmate search issues require "[b]alancing the significant and legiti-

mate security interests of the institution against the privacy interests of the inmates." *Bell v. Wolfish,* 441 U.S. 520, 560, 99 S.Ct. 1861, 1885, 60 L.Ed.2d 447 (1979). To preserve the compromise reflected in this consent decree, the exception for exigent circumstances must be construed so as to protect "legitimate security interests of the institution." Moreover, the parties to the decree chose a fundamentally ambiguous term in "exigent circumstances." In construing this term for contempt purposes, courts can do no less than what is required in determining whether to enjoin prison officials in the first instance—give "appropriate deference to the decisions of prison administrators and appropriate recognition to the peculiar and restrictive circumstances of penal confinement." *Jones v. North Carolina Prisoners' Union,* 433 U.S. 119, 125, 97 S.Ct. 2532, 2537, 53 L.Ed.2d 629 (1977).

 Some exigent circumstances may require search of the inmate's legal papers but not outside his presence. For example, in *Aldape v. Lambert,* 34 F.3d 619 (8th Cir. 1994), prison officials had a tip that inmate Aldape had brought a knife into his cell. A knife or a gun is a bulky object that presumably cannot be cleverly secreted in an inmate's legal files. Thus, there is no apparent prison security reason for barring an inmate from watching the search for this type of contraband, and the prison officials in *Aldape* admitted they searched in his absence for their own convenience. As we held in that case, the convenience of prison administrators is not exigent circumstances for purposes of paragraph IV.C.4. of the *Dee v. Brewer* decree.

However, other types of exigent circumstances "may require the inmate's brief absence from the area to be searched, so that contraband is not concealed or destroyed." *Lyon,* 727 F.2d at 769. In this case, Warden Hedgepeth testified that the search was conducted outside Wycoff's presence because "[i]f I'd search in front of him, he knows what we found or didn't find," and "[i]f we don't find it . . . he knows where best to hide

---

killed one inmate and injured 8 others in Belfast jail).

it next time." This is not a matter of mere convenience for the prison administrators. Prison officials have a legitimate security interest in searching outside the inmate's presence for items that may be secreted in an inmate's legal papers, such as the small amount of drugs in *Mahers,* the escape plans in *Lyon,* or the bomb-making plans in this case. Otherwise, security officials fear, the inmate population will learn the search techniques employed and devise methods of concealment that will frustrate future searches. Therefore, we agree with the district court that Warden Hedgepeth properly found exigent circumstances to search Wycoff's legal papers outside his presence.

■ The district court's second essential finding—that defendants' delay in searching Wycoff's legal materials was reasonable—likewise is not clearly erroneous. At the contempt hearing, Warden Hedgepeth explained that the prison staff was severely shorthanded on October 7 when the legal papers were seized. The investigators who usually conduct such searches were out of the prison conducting polygraph tests, seventeen staff members were sick or on vacation, and the Emergency Response Team was handling security for a court session in the prison. The district court credited this testimony and found that Warden Hedgepeth acted reasonably in arranging to have his shorthanded staff conduct the search at 6:00 the following morning, before their regular shifts began. *Compare Lyon,* 727 F.2d at 769–70 (escape threat justified next-day search of legal papers). While the term "exigent circumstances" normally connotes some sense of urgency, the benchmark for construing paragraph IV.C.4. is the legitimate security interests of the institution. The district court properly adhered to that standard.

That brings us to the most troubling aspect of this case—the fact that the search was completed just hours before the district court granted Wycoff a temporary restraining order. The court found that defendants did not know it was considering such an order when they began the search at 6:00 that morning. This finding is not clearly erroneous, because it is undisputed that attorney Mears only told Assistant Attorney General Lindebak that Wycoff *might* seek a temporary restraining order. Had Mears unequivocally declared that his client would seek emergency judicial relief, Lindebak as an officer of the court would have been required to advise his client to give the court a reasonable opportunity to assess the equities of the situation. But since Wycoff and Mears equivocated, defendants were not required to act as though a TRO motion had been filed.

We are nonetheless disturbed by the inadequate communication between Lindebak and Warden Hedgepeth. At the contempt hearing, Hedgepeth acknowledged that Lindebak told him on October 7 that Wycoff might seek a court order on October 8. Yet when Lindebak resisted Wycoff's TRO application at 9:00 the next morning, he did not know that his client already had concluded the search. The record does not reveal exactly what happened, and it appears that all participants must share the blame, but the bottom line is that these parties and their attorneys wasted the district court's time in a futile temporary restraining order exercise. In the future, we expect the Iowa Attorney General's Office to communicate more effectively with prison officials, so that inmates and their attorneys have fair and timely notice of what adverse action is being taken, and so that the court receives accurate and timely information about the status of pending disputes.

Despite our dismay at what occurred at the temporary restraining order stage of these proceedings, after careful review of the record—in particular, defendants' testimony at the contempt hearing—we conclude that the district court did not abuse its discretion in declining to hold defendants in contempt of the *Dee v. Brewer* decree. The record reflects substantial, good faith compliance with the decree by prison officials who were faced with a potentially severe breach of prison security.

The judgment of the district court is affirmed.