# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1745

_____

| | | |
|---|---|---|
| Lonnie Foster, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Roger Lawson; | * | |
| | * | |
| Defendant-Appellee, | * | |
| | * | |
| John Doe; | * | Appeal from the United States |
| | * | District Court for the Southern |
| Defendant, | * | District of Iowa. |
| | * | |
| Scott Hawk; | * | [PUBLISHED] |
| | * | |
| Defendant-Appellee, | * | |
| | * | |
| James Helling; Charles Harper; | * | |
| Rick Larkin; | * | |
| | * | |
| Defendants, | * | |
| | * | |
| Scott Bryant, | * | |
| | * | |
| Defendant-Appellee. | * | |

_____

Submitted:  May 13, 2002

Filed:  May 30, 2002

_____

Before McMILLIAN, FAGG, and MELLOY, Circuit Judges.

_____

PER CURIAM.

Iowa inmate Lonnie Foster contends prison officials violated his civil rights when they searched his legal materials outside his presence. After Foster's claim was originally dismissed, Foster appealed, and this court remanded for further findings about whether there was a legitimate penological reason for the search. The district court[*] then conducted a bench trial, made factual findings about the search, and concluded Foster's civil rights were not violated by the search. Foster appeals and we affirm.

First, Foster claims the district court committed clear error when it found Foster knew about the prison's search policy that inmates should keep their legal and nonlegal papers separate. See Randolph v. Kemna, 276 F.3d 401, 403 (8th Cir. 2002) (standard of review). At trial, the following exchange occurred between the government's attorney and Foster:

Mr. Hill: Mr. Foster, are you familiar with the rules of the search of inmate property within the Iowa prison system?

Mr. Foster: Yes, I am.

Q:  And you're aware there's a distinction between both personal and legal materials, correct?

A:  Yes.

Q:  And legal materials are searched differently than personal materials, correct?

A:  Yes. . . .

---

[*]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

Q: You knew these rules regarding inmate searches and you knew that personal and legal materials were searched differently on June 23, 1998?

A: Yes.

(Tr. 30-31.) We conclude the district court's finding that Foster knew of the legal paper segregation policy was free from clear error.

Second, Foster argues the district court committed clear error when it found Foster misled prison officials by claiming his two locker boxes (the subject of the search) contained only legal materials. See Randolph, 276 F.3d at 403 (standard of review). An Iowa prison official testified it was an "ongoing problem" at the time Foster's belongings were searched that "some inmates got the idea that if they declared something to be legal, we couldn't undeclare it, they could make us. . . make a search of it all in front of them." (Tr. 66.) Foster's two locker boxes did contain legal materials–but also mixed in were twelve personal letters, thirty-three magazines, and numerous other pieces of nonlegal material. An administrative law judge concluded Foster should be disciplined for providing false information about the contents of his locker boxes in an attempt to impede the prison officials' search. We conclude the district court did not commit clear error by finding Foster misled prison officials about the contents of his two locker boxes.

Third, Foster contends the district court committed clear error when it found prison officials separated Foster's legal from nonlegal materials and did not search the legal materials outside Foster's presence. See Randolph, 276 F.3d at 403 (standard of review). The prison officials' reports and testimony establish that after the prison officials realized Foster's legal and nonlegal materials were mixed together, the officials removed all materials from Foster's presence and separated the legal materials from the nonlegal materials. The officials then left the legal materials in Foster's two locker boxes and took the nonlegal materials to the investigation office where the nonlegal materials alone were thoroughly searched. A prison official

testified the legal materials were later searched in Foster's presence. Because Foster does not present any evidence to the contrary, we conclude the district court's finding is not clearly erroneous.

Finally, Foster claims the prison lacks a security interest to justify searching an inmate's legal papers outside that inmate's presence when the inmate has mixed nonlegal material in with his legal papers. We review the district court's conclusion de novo and assume for purposes of this part of our discussion that the mere separation of Foster's legal and nonlegal materials qualifies as a search. See Randolph, 276 F.3d at 403 (standard of review). At the time Foster's materials were searched, Iowa prison officials were bound by the Dee v. Brewer consent decree which gave inmates the right to be present during a search of their legal materials in the absence of exigent circumstances. Wycoff v. Hedgepeth, 34 F.3d 614, 615 (8th Cir. 1994). The exigent circumstances exception was based on the prison's "legitimate security interest in searching outside the inmate's presence for [contraband] that may be secreted in an inmate's legal papers" such as drugs or plans for illegal activity. Id. at 618. "Otherwise, security officials fear, the inmate population will learn the search techniques employed and devise methods of concealment that will frustrate future searches." Id.

Explaining how an inmate's presence relates to the prison's security interest, a prison official testified:

> For one thing, I don't want to send the inmate to school on places [a prison official] may look. I don't want him to be able to distract the officers from looking or doing – he may notice during the shakedown that one particular officer always forgets to look in a certain place or that more than one does, and I don't want the inmates to know. If there is a weakness in someone's particular methods, he doesn't need to know that so then he knows where to hide his contraband.

(Tr. 67).  The <u>Dee v. Brewer</u> consent decree and relevant caselaw protect an inmate's right to maintain the privacy of his or her legal materials.  Foster, in an effort to be present for a search of his nonlegal materials, attempted to take advantage of this protection by mixing his legal and nonlegal materials together.  Foster's deception created exigent circumstances which gave the prison officials a legitimate security interest in searching Foster's legal materials outside of his presence.

Based on the reasons stated above, we affirm the district court's well-reasoned findings of fact and conclusions of law.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.