# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

———

No. 09-6011

———

|   |   |   |
|---|---|---|
| In re: | * | |
| | * | |
| Clarence Lee Burnett and | * | |
| Frances Ellen Burnett, | * | |
| | * | |
| Debtors. | * | |
| | * | |
| | * | |
| Nancy Jo Burnett, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Creditor - Appellant, | * | Western District of Arkansas |
| | * | |
| v. | * | |
| | * | |
| Clarence Lee Burnett, | * | |
| | * | |
| Debtor - Appellee. | * | |
| | * | |

———

Submitted: June 24, 2009
Filed: July 7, 2009

———

Before SCHERMER, MAHONEY, and SALADINO, Bankruptcy Judges.

———

SALADINO, Bankruptcy Judge.

Nancy Jo Burnett appeals from an order of the Bankruptcy Court[1] filed January 15, 2009, finding that the confirmed Chapter 13 plan in this case prevented her from collecting more than $300.00 per month post-discharge in connection with domestic support obligations owed by Clarence Lee Burnett, Debtor. She also appeals the Bankruptcy Court's order of March 10, 2009, denying her motion to reconsider. Ms. Burnett believes that her right to collect post-petition spousal support and accrued interest on her support arrearage claim was not limited by the confirmed plan. For the reasons stated below, we reverse.

## FACTS AND PROCEDURAL HISTORY

Nancy Jo Burnett and Debtor, Clarence Lee Burnett, were married in 1969. Debtor and Ms. Burnett had a child who was born on May 24, 1971. Court proceedings with respect to dissolution of their marital relationship began in 1982 with the filing by Ms. Burnett of a petition for separate maintenance in the Circuit Court of Boone County, West Virginia. On November 12, 1983, the parties entered into a written separation agreement under the terms of which Debtor agreed to pay support to Ms. Burnett. Specifically, Debtor agreed to pay Ms. Burnett the sum of "$750.00 per month for child support and alimony until the child reaches the age of eighteen."[2] That support agreement was subsequently incorporated into a decree of separate maintenance entered in West Virginia on December 19, 1983.

After that date, state court cases were filed in West Virginia and Arkansas with respect to the dissolution of the marriage and enforcement of support. Divorce decrees and orders regarding support enforcement were entered in each state. On December 8, 2000, in connection with a proceeding to enforce the payment of support, the West

---

[1]The United States Bankruptcy Court for the Western District of Arkansas.

[2]The agreement did not allocate the $750.00 between child support and alimony.

Virginia Supreme Court of Appeals determined that many of the prior court decisions in West Virginia and Arkansas had jurisdictional defects, and only the decree of separate maintenance entered in Boone County Circuit Court of West Virginia incorporating the 1983 written separation agreement contained an enforceable support order that remained effective. Accordingly, the West Virginia Supreme Court of Appeals remanded the collection proceedings to the Boone County Circuit Court. On August 29, 2001, the Circuit Court of Boone County, West Virginia, entered its order finding that Debtor was in arrears in the payment of support in the principal sum of $57,402.70[3] and that further proceedings would be needed to determine the amount of interest due to Ms. Burnett.

Before further state court proceedings could occur, Debtor and his current spouse filed the underlying Chapter 13 proceeding on December 13, 2001. The parties spent the next three years litigating the support issue in the Bankruptcy Court. On June 2, 2004, the Bankruptcy Court entered an order which stated:

> The parties have reached an agreement as follows: Debtor will modify his plan to provide for payment of $300.00 per month for the allowed claim of $57,402.70 over the life of the plan. Once the plan is concluded and the bankruptcy action is terminated, Debtor will continue to pay the sum of $300.00 per month toward the balance of the allowed claim until the debt is satisfied in full. Creditor reserves the right to return to the Boone County Circuit Court in West Virginia after this bankruptcy action is concluded to litigate the issue of accrued interest on the support arrears; Debtor reserves the right to assert defenses regarding the issue of accrued interest on the support arrears.

Debtor's Chapter 13 plan was confirmed on November 15, 2004. The plan incorporated the language from the June 2, 2004, order, although the language was

---

[3]The order is unclear as to the date as of which such arrearage was calculated.

slightly modified to include the word "child" in front of each place where the word "support" appeared.

Upon completion of payments under their confirmed Chapter 13 plan, Debtor and his spouse were discharged on November 13, 2007. The Bankruptcy Court issued an order finding that Debtor had paid $20,100.00 during the pendency of the bankruptcy proceeding toward the claim of Ms. Burnett in the amount of $57,402.70.

Upon completion of the bankruptcy case, Ms. Burnett returned to the Family Court of Boone County, West Virginia, to litigate the issue of arrearages and interest thereon. Debtor failed to appear and defend himself in that proceeding. Ms Burnett appeared as did an attorney for the West Virginia Bureau of Child Support Enforcement ("BCSE").[4] BCSE presented spreadsheets showing the calculation of the arrearages for child support and alimony/spousal support dating back to 1983.[5] Without explanation, the entire $750.00 monthly obligation was allocated to child support until May of 1989 (when the child reached age 18). After that date, an ongoing obligation of $375.00 per month for spousal support was factored into the calculations.[6] Based on those calculations, on March 7, 2008, the Family Court

---

[4]At various times, the West Virginia Bureau of Child Support Enforcement has appeared on behalf of Appellant and itself as subrogee of Appellant.

[5]The calculations presented reveal that the arrearage amount of $57,402.70 used in the bankruptcy plan was equal to the principal amount of child support and spousal support past due as of January of 2001, not including interest.

[6]It is unclear how BCSE and the court reached the conclusion that there was an ongoing spousal support/alimony obligation when the underlying order entered in 1983 only provided for "child support and alimony until the child reaches the age of eighteen." The child reached 18 years of age on May 24, 1989. The Family Court of Boone County apparently determined that while the child support portion of the obligation ceased on that date, the spousal support obligation continued at the rate of
(continued...)

4

entered its order and judgment finding that Debtor was in arrears on child support in the principal amount of $11,348.45 plus interest accrued on the child support arrearage in the amount of $76,956.53. The court also found Debtor owed an arrearage of $51,215.13 to Ms. Burnett for spousal support plus $55,452.50 for interest on past-due spousal support. The court further ordered that payments begin immediately by income withholding. Debtor did not appeal that order and income withholding from Debtor's government pension commenced.

Rather than appeal the order of the Family Court of Boone County, Debtor filed a motion to reopen his Chapter 13 bankruptcy case for purposes of filing a motion for contempt against the State of West Virginia/BCSE and Ms. Burnett. The motion to reopen was granted and, on October 13, 2008, Debtor filed a motion for contempt asserting that BCSE and Ms. Burnett had violated the terms of the confirmed plan by collecting an amount in excess of $300.00 per month.

On January 15, 2009, the United States Bankruptcy Court for the Western District of Arkansas granted the motion for contempt, finding that the confirmed plan provided for a payment of $300.00 per month after discharge and did not contain any language indicating that Debtor would be under any separate payment obligation for accrued interest or spousal support. The court further found that Debtor's only payment obligation towards child support, spousal support, or interest thereon would be $300.00 per month. Debtor's request for punitive damages and attorney fees was denied because the court found that Ms. Burnett and BCSE's interpretation of the plan was reasonable. Ms. Burnett and the State of West Virginia were ordered to discontinue income withholding and were further ordered to refund all amounts

---

[6](...continued)
$375.00 per month. In any event, Debtor did not appeal that order.

withheld in excess of $300.00 per month. Ms. Burnett asked for reconsideration of that order, which request was denied.[7]

STANDARD OF REVIEW

The Bankruptcy Court's findings of fact are reviewed for clear error and its conclusions of law are reviewed de novo. *First Nat'l Bank of Olathe v. Pontow (In re Pontow)*, 111 F.3d 604, 609 (8th Cir. 1997); *Sholdan v. Dietz (In re Sholdan)*, 108 F.3d 886, 888 (8th Cir. 1997); Fed. R. Bankr. P. 8013. The interpretation of the meaning and effect of a confirmation order is reviewed under the abuse of discretion standard. *Klesalek v. Klesalek (In re Klesalek)*, 307 B.R. 648, 651 (B.A.P. 8th Cir. 2004) (citing *Gen. Elec. Capital Corp. v. Dial Bus. Forms, Inc. ( In re Dial Bus. Forms, Inc.)*, 341 F.3d 738, 744 (8th Cir. 2003)). The Bankruptcy Court has discretion to grant or deny a motion for contempt, which is reviewed under an abuse of discretion standard. *Wycoff v. Hedgepeth*, 34 F.3d 614, 616 (8th Cir. 1994). An abuse of discretion occurs when the Bankruptcy Court fails to apply the proper legal standard or bases its order on findings of fact that are clearly erroneous. *Official Comm. of Unsecured Creditors v. Farmland Indus., Inc. (In re Farmland Indus., Inc.)*, 397 F.3d 647, 651 (8th Cir. 2005).

DISCUSSION

The confirmed plan (based on an agreement reached by the parties) provided that Ms. Burnett would be entitled to an allowed priority claim in the amount of $57,402.70. Debtor agreed to pay her $300.00 per month for the life of the plan, and after the plan is concluded, Debtor agreed to continue to pay $300.00 per month until the debt is satisfied in full. Further, Debtor and Ms. Burnett agreed that Ms. Burnett "has reserved the right to return to the Boone County Circuit Court in West Virginia

---

[7]Order of the United States Bankruptcy Court dated March 10, 2009.

after completion of the bankruptcy to litigate the issue of accrued interest on the child support arrearage."[8] Thus, the ultimate issue to be decided is whether the confirmed plan prevents Ms. Burnett from collecting more than $300.00 per month on any obligation Debtor may owe to her.

11 U.S.C. § 1327(a) provides that the provisions of a confirmed plan bind the debtor and each creditor. Accordingly, and regardless of what any other court may have stated during the drawn-out proceedings between Debtor and Ms. Burnett, the principal amount of the claim held by Ms. Burnett for "support" amounted to $57,402.70 as of the date of bankruptcy filing. The payment of that claim was compromised by agreement of the parties such that it would be paid at the rate of $300.00 per month (both during and after the bankruptcy) until paid in full.

However, that plan only dealt with the principal amount of the support arrearage claim held by Ms. Burnett as of the date of the bankruptcy filing. It specifically did not address any claim which was awarded post-petition, namely, the interest due to Ms. Burnett. In fact, the parties expressly reserved the right to "litigate" the accrued interest issue upon completion of the bankruptcy plan. Nothing in the confirmed plan placed any limitation on Ms. Burnett's right to "litigate" the accrued interest issue. In particular, nothing in the confirmed plan addressed how the interest, if found to be due to Ms. Burnett, would be paid.  Based on the plain language of the confirmed plan, the Bankruptcy Court erred in finding that it limited Ms. Burnett's right to collection of any amount found to be due to her for accrued interest. 11 U.S.C. § 1322(a)(2) (holder of priority claim, which shall be paid in full, may agree to different treatment of claim); *Foster v. Bradbury (In re Foster)*, 319 F.3d 495, 497-98 (9th Cir. 2003) (holding that interest on nondischargeable child support obligations continues to accrue after a Chapter 13 petition is filed and is not dischargeable).

---

[8]The agreement actually said "support arrearage" but the plan language said "child support arrearage."

Upon completion of Debtor's Chapter 13 plan, Ms. Burnett returned to the Family Court of Boone County which found that she was owed an ongoing obligation for the payment of spousal support. To the extent Debtor had a continuing post-petition obligation to pay spousal support, the confirmed plan could not, and did not, affect that obligation. 11 U.S.C. §§ 502(b)(5) and 507(a)(1)(A). Therefore, the Bankruptcy Court erred in finding that the confirmed plan limited Ms. Burnett's rights with respect to any domestic support obligation that accrued post-bankruptcy filing.

The confirmed plan in this case dealt only with the principal amount of the support obligation arrearage that was due to Ms. Burnett on the date of bankruptcy filing. The figures introduced to the state court post-bankruptcy appear to be based on the same calculations used to establish Ms. Burnett's arrearage claim treated in the plan. To the extent Debtor disputes the calculation of interest on the support arrears (which the parties expressly agreed could be litigated in Boone County post-bankruptcy), the amount of post-bankruptcy filing spousal support, or the allocation of the $20,100.00 paid to Ms. Burnett under the Chapter 13 plan, such issues should be raised in the Boone County Family Court.

CONCLUSION

Because we conclude that Ms. Burnett's right to collect accrued interest and to be paid any post-petition domestic support obligations were not limited by the confirmed plan, the Bankruptcy Court's orders of January 15, 2009, and March 10, 2009, are reversed.

_____

8